IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: KII LIQUIDATING, INC., (f/k/a KATY INDUSTRIES, INC.), *et al.*, | : : : | Chapter 11 Bankr. Case No. 17-11101-LSS (Jointly Administered) |
| Debtors. | : : | |
| EMERALD CAPITAL ADVISORS, as Plan Administrator, Appellant, v. | : : : : : | Adv. Proc. No. 17-50937-LSS |
| VICTORY PARK CAPITAL ADVISORS, LLC; VICTORY PARK MANAGEMENT, LLC; VPC SBIC I, L.P.; and JANSAN ACQUISITION, LLC, | : : : : | Civ. No. 18-1081-LPS |
| Appellees. | : | |

## **MEMORANDUM**

### I. **INTRODUCTION**

Pending before the Court is an appeal (D.I. 1) from the Bankruptcy Court's July 6, 2018 decision, *In re Katy Industries, Inc.* 590 B.R. 628 (Bankr. D. Del. 2018), and related Order (Adv. D.I. 35) ("Dismissal Order")[1] (together, the "Decision"), issued by the Honorable Kevin J. Carey,[2] dismissing with prejudice a complaint (Adv. D.I. 18, Ex. A) ("Complaint") filed by the Official Committee of Unsecured Creditors ("Committee") in the above-captioned adversary proceeding ("Adversary Proceeding"). Emerald Capital Advisors, as Plan Administrator and

---

[1] The docket of the Chapter 11 cases, captioned *In re KII Liquidating, Inc., et al.,* Case No. 17-11101 (LSS) (Bankr. D. Del.), is cited herein at "B.D.I. __." The docket of the Adversary Proceeding, captioned *The Official Committee of Unsecured Creditors of Katy Industries, Inc. v. Victory Park Capital Advisors, LLC, et al.*, Adv. No. 17-50937 (LSS) (Bankr. D. Del.), is cited herein as "Adv. D.I. __."

[2] By Order dated April 11, 2019 (Adv. D.I. 44), the Adversary Proceeding was reassigned to the Honorable Laurie Selber Silverstein.

successor to the Committee ("Appellant"),[3] appeals the Decision. For the reasons that follow, the Court will reverse the Decision in part and remand to the Bankruptcy Court for entry of an order granting leave to amend the Complaint.

## II. BACKGROUND

### A. The Debtors and Jansan

Katy Industries, Inc. and its debtor affiliates (the "Debtors") filed for Chapter 11 relief on May 14, 2017 (the "Petition Date") to consummate a sale of substantially all of their assets to Jansan Acquisition, LLC ("Jansan"), their debtor-in-possession ("DIP") lender and proposed stalking-horse purchaser. (Complaint, ¶ 42) Jansan was a joint venture between the Debtors' prepetition second-lien lenders (the "Second-Lien Lenders" – i.e., Victory Park and Centrex[4]), which contributed their secured debt (the "Second-Lien Debt"), and Highview Capital, LLC, which contributed the cash needed to provide DIP financing to the Debtors. (*Id.* ¶¶ 8, 39-42)

On the Petition Date, the Debtors filed motions (i) to approve the DIP financing from Jansan and provide certain protections to the prepetition Second-Lien Lenders (B.D.I. 13) (the "DIP Financing Motion"), and (ii) to approve bidding procedures and stalking-horse protections for Jansan in connection with the sale of the Debtors' assets and to approve the sale (B.D.I. 18) (the "Sale Motion"). On May 16, 2017, following the "first day" hearing in the Chapter 11 cases, the Bankruptcy Court entered an order granting the DIP Financing Motion on an interim

---

[3] Under the Chapter 11 plan confirmed by the Bankruptcy Court on May 2, 2018 (B.D.I. 655, Ex. 2) (the "Plan"), Emerald Capital Advisors, as Plan Administrator, succeeded to the Committee's rights with respect to this appeal and the underlying litigation upon the Effective Date of the Plan (*see* Plan § 15.10), which occurred on November 29, 2018 (B.D.I. 732).

[4] As used herein, "Victory Park" refers collectively to Victory Park Capital Advisors, LLC and its affiliates Victory Park Management, LLC and VP SBIC I, L.P., while "Centrex" refers collectively to Centrex Plastics, LLC and T.R. Plastics, LLC.

2

basis (B.D.I. 48) (the "Interim DIP Order"). As is customary, the Interim DIP Order contained stipulations from the Debtors as to the amount and validity of the Second-Lien Debt and the absence of claims against the Second-Lien Lenders, and also included affirmative releases of any claims against the Second-Lien Lenders. (*Id.* at ¶ J(ii), (v)-(viii)) As is also required by the Bankruptcy Court's local rules, *see* Del. Bankr. L.R. 4001-2(a)(i)(B), the Interim DIP Order provided that the Debtors' stipulations and releases were subject to "Challenge" by an official committee of unsecured creditors within 60 days after its formation. (*Id.* at ¶ 26)

The proposed stalking-horse asset purchase agreement with Jansan contemplated a credit bid of the entire amount of the Second-Lien Debt toward the purchase of the Debtors' assets. (*See* B.D.I. 18, Ex. B at 3.1; *see also id.*, Ex. A at ¶ 14 (noting Jansan bid "is a credit bid"))

### B. Committee, Challenge Deadline, and the Sale Order

On May 26, 2017, the United States Trustee appointed the Committee, pursuant to § 1102(a)(1) of the Bankruptcy Code. *See Katy*, 590 B.R. at 634. On June 12, 2017, the Committee filed an objection to final approval of the DIP financing and the proposed bidding procedures, wherein the Committee noted it was specifically investigating whether the most recent $7.5 million of advances by Victory Park prior to the Petition Date (the "Challenged Advances") "were more properly characterized as an equity infusion or [were] susceptible to equitable subordination pursuant to 11 U.S.C. § 510(c)." (B.D.I. 119 at ¶ 11 n.6; *see also id.* at 26 n.14)

On June 19, 2017, the Bankruptcy Court entered a final order approving the DIP financing (B.D.I. 167) (the "Final DIP Order") and an order approving bidding procedures and stalking-horse protections for Jansan (B.D.I. 163) (the "Bidding Procedures Order"), both of which reflected certain changes from the original proposed forms of order, to resolve the Committee's objections. *See Katy*, 590 B.R. at 634-35. Like the Interim DIP Order before it, the

3

Final DIP Order contained stipulations from the Debtors as to the amount and validity of the Second-Lien Debt and the absence of claims against the Second-Lien Lenders, and also included affirmative releases of any claims against the Second-Lien Lenders – all subject to the Committee's right to bring a "Challenge" by the "Challenge Deadline" of July 25, 2017. (B.D.I. 167 at ¶¶ I(ii), (v)-(viii), and 26)

The Debtors and Jansan went to market with a stalking-horse bid of $63 million. *See Katy*, 590 B.R. at 637 (discussing amount of Jansan purchase price). The stalking horse bid resulted in a required minimum overbid of $64.25 million in order for another bidder to "qualify" and force an auction for the Debtors' assets pursuant to the Bidding Procedures Order. (*See* B.D.I. 163, Ex. 1 at 17-18 (discussing requirements for "Qualified Bids"))

On July 5, 2017, the Debtors filed a proposed form of sale order in the event that Jansan was deemed the "Successful Bidder" in accordance with the Bidding Procedures Order. (B.D.I. 218) Around this time, the Committee's investigation revealed colorable grounds for recharacterization or subordination of the Challenged Advances. Accordingly, on July 11, 2017, the Committee filed an objection and reservation of rights with respect to the Debtors' proposed form of sale order, to the extent it could be construed to limit or otherwise affect the Committee's "Challenge" rights under the Final DIP Order, if the sale were approved and consummated prior to the July 25, 2017 Challenge Deadline. (*See* B.D.I. 268) The Committee requested the inclusion of the following language in the order:

> ***Notwithstanding anything to the contrary in this Order or in the Final APA***, entry of this Order and approval and consummation of the transactions contemplated hereby ***shall not limit or otherwise affect*** the rights ***or remedies*** of the Debtors' estates, the Committee, or any other party in interest, with respect to any "Challenge" as defined in paragraph 26 of the Final DIP Order.

(B.D.I. 268 at ¶ 5 (emphasis added))

4

On July 12, 2017, the Debtors filed a notice indicating that there were no qualified bids other than Jansan's for the Debtors' assets, and declaring Jansan the "Successful Bidder" pursuant to the Bidding Procedures Order (B.D.I. 276). *Katy*, 590 B.R. at 634. On July 17, 2017, the Bankruptcy Court held a hearing on the Sale Motion. Prior to that hearing, the Debtors, Jansan, and the Committee agreed upon a revised form of sale order (B.D.I. 295) (the "Sale Order") containing the Committee's requested language (with non-material modifications) as a new paragraph 48:

> ***Notwithstanding anything to the contrary contained in this Order or in the Final APA,*** entry of this Order and approval and consummation of the transactions contemplated hereby ***shall not limit or otherwise affect*** the rights ***or remedies*** of the Debtors' estates or the Committee with respect to any "Challenge" as defined in paragraph 26 of the Final DIP Order.

(B.D.I. 295 at ¶ 48 (emphasis added))[5] At the hearing, Debtors' counsel walked the Bankruptcy Court through the changes to the Sale Order from the original proposed version:

> And lastly, paragraph 48, this is the language with respect to the committee. It simply makes clear that the challenge rights of the committee baked into the final DIP order are ***in no way impacted*** by the relief requested or the order being entered today, and all of their rights ***and remedies*** are preserved.

(B.D.I. 303, 7/17/2017 Hr'g Tr. at 37 (emphasis added)) Later in the hearing, the Committee's counsel stated that there were "still some fairly pointed issues the Committee continues to look at" with respect to its Challenge Deadline, but "that's ***all been preserved*** by virtue of the language in the order." (*Id.* at 42-43) (emphasis added) Counsel for Jansan was present at the hearing (*id.* at 5), and no party disputed the characterization of the effect of paragraph 48 of the Sale Order.

---

[5] The Appellees and the Bankruptcy Court at times refer to this language as the "Savings Clause." *See Katy*, 590 B.R. at 636.

5

On July 18, 2017, the Court entered the Sale Order, which approved the final form of Amended and Restated Asset Purchase Agreement with Jansan, which was attached as Exhibit A thereto (B.D.I. 295, Ex. A) (as amended and supplemented, the "Final APA"), and authorized the Debtors and Jansan to immediately close upon the transactions contemplated in the Final APA. On July 21, 2017, the Debtors and Jansan closed on the sale of the Debtors' assets pursuant to the Final APA. It appears undisputed that, at the closing, Jansan offset approximately $36.7 million of the Victory Park Second-Lien Debt (including the $7.5 million arising from the Challenged Advances) against the $63 million purchase price for the Debtors' assets.

**C.     The Adversary Proceeding and Decision**

Four days later, on July 25, 2017, the Committee initiated the Adversary Proceeding by filing its Complaint against Victory Park, Jansan, and Charles Asfour, a Victory Park principal and former Chairman of the Board of the Debtors. In the Complaint, the Committee asserted causes of action against Victory Park and Jansan for: (i) recharacterization or equitable subordination of Victory Park's claims on account of $7.5 million of Challenged Advances spanning July 2016 to April 2017 (Counts I and II); (ii) avoidance of the sale of the Debtors' assets to the extent it was made in exchange for a putative credit bid of a recharacterized or subordinated claim (Counts III and IV); and (iii) recovery of funds from Jansan, as transferee of an avoided transfer (Count V). In addition, the Committee asserted separate causes of action against Asfour (Counts VI and VII) that are not at issue in this appeal.

On September 12, 2017, Victory Park and Jansan moved to dismiss Counts I-V of the Complaint (Adv. D.I. 14, 15) (the "Dismissal Motion"), making various arguments to the effect that the approval and consummation of the sale to Jansan had cut off the Committee's rights and remedies with respect to its putative "Challenge" to the Victory Park Second-Lien Debt. (*See* Adv. D.I. 15 at 5-7 (arguing Second-Lien Debt was no longer subject to recharacterization or

6

subordination because it had been credit bid at closing of sale); *id.* at 8-10 (arguing that Bankruptcy Court's authorization of sale precluded it from being set aside under § 549 of Bankruptcy Code))

The Committee opposed the Dismissal Motion, arguing primarily that paragraph 48 of the Sale Order had expressly preserved all of the Committee's rights and remedies with respect to any "Challenge" of the Victory Park Second-Lien Debt that Jansan had purportedly credit bid against the purchase price for the Debtors' assets. (Adv. D.I. 21 at ¶¶ 42-56) Alternatively, to the extent the Bankruptcy Court was inclined to grant the Dismissal Motion in whole or in part, the Committee requested leave to amend its Complaint. (*Id.* at 28)

The Bankruptcy Court heard oral argument on the Dismissal Motion on December 13, 2017. (B.D.I. 597, 12/13/2017 Hr'g Tr. at 12-36) The Committee stressed that the Complaint did not seek to upset the sale, but rather to "adjust[] the economics" of the sale in accordance with the Committee's Challenge rights: "[A]s between Jansan and every other party in the universe, the sale order is exactly what you would expect it to be. As between Jansan and the [C]ommittee, by virtue of the language, there's still this issue in play." (*Id.* at 26) The Committee suggested that, to the extent that the Bankruptcy Court merely disagreed that a remedy would properly lie under sections 544, 549, and 550 of the Bankruptcy Code, another remedy may be fashioned, including under the Bankruptcy Court's broad equitable power. (*See id.* at 26) Following oral argument, the Bankruptcy Court took the matter under advisement.

On July 6, 2018, the Bankruptcy Court entered the Dismissal Order, dismissing the Complaint "in its entirety, with prejudice" (Adv. D.I. 35) for the reasons set forth in the accompanying Decision. *See Katy*, 590 B.R. 628. With respect to Counts I and II (recharacterization, or, in the alternative, subordination of the advances), the "gating issue" recognized by the Bankruptcy Court was "whether the Committee successfully preserved its

7

ability to assert its claims for recharacterization or subordination of the Advances in the first place." *Katy*, 590 B.R. at 636. The Decision, however, does not decide the gating issue. "Even assuming, but not deciding, that the Committee's right to bring these Challenges after consummation of the Sale Order was preserved, there is no practical, useful remedy that results in any recovery to the estate," as "[n]either recharacterizing nor subordinating the Advances would enhance any potential distribution to creditors." *Id.* at 637. The Bankruptcy Court reasoned that:

> Jansan's bid was the only qualified bid received by the deadline, with a Purchase Price of approximately $63 million. Under the APA, Jansan credit bid and offset approximately $36.7 million of the Purchase Price; the assumed liabilities make up the remaining $26.3 million balance. As the Defendants specifically argued throughout their papers and during Oral Argument, even if $7.5 million of Jansan's credit bid is disqualified (the amount of the Advances), Jansan would have simply gone to market with a $29.2 million in § 363(k) currency and $55.5 million collectively as its bid. Given the lack of qualified bidders, $55.5 million would still have been the successful bid. Accordingly, reshaping the economics of the deal to reflect a hypothetical reduction of $7.5 million in § 363(k) currency would have no tangible, ameliorative effect for the Committee.

*Id.* at 637-38 (internal footnotes omitted).

The Bankruptcy Court noted a dispute as to "the theoretical definition of 'remedy' under these circumstances." *Id.* at 638 n.51. The Bankruptcy Court disagreed with the Committee's argument that, under the APA, the Purchase Price was defined as "an amount equal to" the sum of various components. (*See, e.g.*, 12/13/17 Hr'g Tr. at 27-28) Rather, the Bankruptcy Court agreed with Appellees' contention that "the Purchase Price was simply a number calculated to set the overbid for purposes of the bidding process." *Id.* The Decision further holds that "the Committee's request for relief calls for what would amount to a partial invalidation of both the Bidding Procedures Order and the Sale Order. To do so would turn on its head the finality necessary for the legitimacy of the Section 363 sale process." *Id.*

The Bankruptcy Court next determined that "Counts III, IV, and V fail independently:"

8

> Count III asserts a claim for avoidance based upon 11 U.S.C. § 544. However, § 544 applies only to prepetition transfers of property, whereas the disputed transfer of property in question here, the credit bid of the Advances, occurred postpetition pursuant to the Sale Order. Count IV asserts a claim for avoidance based upon 11 U.S.C. § 549. However, § 549 is applicable only to postpetition transfers that have not been authorized by the court. The Sale Order specifically authorized the credit bidding of the Advances, the property transfers in question. Finally, Count V is a contingent claim for recovery upon the success of Count III or IV. Therefore, Count V necessarily fails as well.

*Id.* at 638 (internal footnotes omitted).

In conclusion, the Bankruptcy Court held: "Even if certain of the Committee's rights were preserved in the Savings Clause, and based upon an analysis of the economics behind the Jansan Transaction,[6] absent upsetting the entirety of the Jansan Transaction and the Sale Order, this Court cannot appropriately fashion a remedy." *Id.* at 639. "Therefore, the Committee necessarily has not stated a claim upon which relief may be granted and the Motion to Dismiss with regard to Counts I, II, III, IV, and V is granted with prejudice." *Id.*[7]

On July 20, 2018, the Committee timely appealed the Decision. (Adv. D.I. 37; D.I. 1) The merits of the appeal are fully briefed. (D.I. 20, 21, 22) The Court did not hear oral argument because the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument.

## III. JURISDICTION AND STANDARD OF REVIEW

Appeals from the Bankruptcy Court to this Court are governed by 28 U.S.C. § 158. Pursuant to § 158(a), district courts have mandatory jurisdiction to hear appeals "from final

---

[6] The Decision also defines the final form of the Debtors' Amended and Restated Asset Purchase Agreement with Jansan as the "Final APA," but uses that term interchangeably with the "Jansan Transaction." *See Katy*, 590 B.R. at 634-35.

[7] The balance of the Decision addressed causes of action against Asfour (Counts VI and VII) that are not at issue in this appeal. Count VI was dismissed by the Bankruptcy Court, and that dismissal was not appealed by the Committee. Count VII was dismissed by stipulation of the parties.

judgments, orders, and decrees" and discretionary jurisdiction over appeals "from other interlocutory orders and decrees." 28 U.S.C § 158(a)(1) and (3). In conducting its review of the issues on appeal, this Court reviews the Bankruptcy Court's findings of fact for clear error and exercises plenary review over questions of law. *See Am. Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80 (3d Cir. 1999). The Court must "break down mixed questions of law and fact, applying the appropriate standard to each component." *Meridian Bank v. Alten*, 958 F.2d 1226, 1229 (3d Cir. 1992).

Dismissal of claims on legal grounds is subject to *de novo* review on appeal. *See Langford v. City of Atlantic City*, 235 F.3d 845, 847 (3d Cir. 2000) (holding appellate review of Fed. R. Civ. P. 12(b)(6) dismissal is plenary); *American Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80 (3d Cir. 1999) (holding that review of dismissal of claims on legal grounds is plenary). The Bankruptcy Court denied leave to amend by granting dismissal with prejudice. *Katy*, 590 B.R. at 643. The standard of review for denial of leave to amend is "plenary if the denial is based on a legal error, and otherwise is for abuse of discretion." *Adams v. Gould Inc.*, 739 F.3d 858, 869-70 (3d Cir. 1984). A finding of futility based on an error of law is a *per se* abuse of discretion. *See Travelers Indemnity Co. v. Dammann & Co., Inc.*, 594 F.3d 238, 243 (3d Cir. 2010) ("If a district court concludes that an amendment is futile based upon its erroneous view of the law, it abuses its discretion.").

## IV. DISCUSSION

### A. Dismissal Is Inconsistent With Paragraph 48 Of The Sale Order

With one exception not material to this appeal,[8] the Bankruptcy Court's dismissal of Counts I-V of the Complaint was premised on the perceived legal effect of entry of the Sale

---

[8] The Bankruptcy Court's dismissal of Count III is based on its conclusion that § 544 of the Bankruptcy Code only applies to prepetition transfers of property. *See Katy*, 590 B.R. at 638.

10

Order or the closing of the sale transaction (or both). With respect to the Committee's recharacterization and subordination claims (Counts I and II), the Bankruptcy Court acknowledged the Committee's argument that successful prosecution of these claims would require Jansan to pay $7.5 million to the Debtors' bankruptcy estates, but concluded that an award of such relief would amount to "partial invalidation" of the Sale Order and "would turn on its head the finality necessary for the legitimacy of the Section 363 sale process." (*Katy*, 590 B.R. at 638 n.51) With respect to the Committee's claim for avoidance of an unauthorized post-petition transfer under § 549 of the Bankruptcy Code (Count IV), the Bankruptcy Court concluded that "the Sale Order specifically authorized the credit bidding of the [Challenged] Advances, the property transfers in question" (*id.* at 639).[9] With respect to the Committee's claim for recovery of avoided transfers (Count V), the Bankruptcy Court concluded that the dismissal of the avoidance counts precluded recovery on this theory. (*Id.*) As Appellant correctly points out, all of these conclusions are simply different ways of saying that the entry of the Sale Order and/or the closing of the sale transaction served to cut off the Committee's rights and remedies with respect to its "Challenge" under the Final DIP Order.

These holdings, however, are in direct conflict with paragraph 48 of the Sale Order, which provides:

> Notwithstanding anything to the contrary contained in this Order or in the Final APA, ***entry of this Order and approval and consummation of the transactions***

---

Appellant states that it disagrees but does not press this issue on appeal. (*See* D.I. 20 at 17 n.6) Appellant does seek relief with respect to Count III (*see id.* at 25) (seeking "revers[al] of Dismissal Order . . . as to Counts I through V"), but not on these grounds. It is unclear what Appellant's theory is for reversal as to Count III. Nevertheless, as the Court is reversing the dismissal with prejudice, and ordering the Bankruptcy Court to provide an opportunity for Appellant on remand to amend, Appellant should be given that same opportunity with respect to Count III.

[9] The Sale Order makes no reference to credit bidding of the Challenged Advances specifically or credit bidding generally. (*See* B.D.I. 295)

11

*contemplated hereby shall not limit or otherwise affect the rights or remedies of the Debtors' estates or the Committee with respect to any "Challenge"* as defined in paragraph 26 of the Final DIP Order.

(B.D.I. 295 at ¶ 48) (emphasis added)

The Decision does not square its ruling on the Dismissal Motion with this provision of the Sale Order. Rather, the Bankruptcy Court seems to conclude that its perceived inability to fashion a remedy eliminates the Committee's rights under paragraph 48 of the Sale Order. Appellant submits that this was reversible error because the Bankruptcy Court was obligated to give effect to its prior order, particularly given the Committee's reasonable reliance on that order in standing down from pressing its "Challenge" rights at the July 17, 2017 sale hearing.

The Court agrees with Appellant. Paragraph 48 of the Sale Order expressly preserved the Committee's rights and remedies with respect to the "Challenge"[10] embodied in its Complaint, against any effect that otherwise might have resulted from the entry of the Sale Order or the closing of the sale transaction. (D.I. 20 at 11) Parties "may expressly reserve in a consent judgment the right to relitigate some or all issues that would otherwise have been barred between the same parties." *Epic Metals Corp. v. H.H. Roberston Co.*, 870 F.2d 1574, 1576 (Fed. Cir. 1989) (citing *United States v Althone Indus.*, 746 F.2d 977, 983 n.5 (3d Cir. 1984)). Paragraph 48 did just that.

---

[10] It is clear that Counts I-V of the Complaint constitute a "Challenge" within the meaning of Paragraph 26 of the Final DIP Order (B.D.I. 48 at ¶ 26), as they (i) arise in an "adversary proceeding," (ii) "challeng[e] the "amount, validity, or enforceability of the Prepetition Second Lien Obligations" that arise from the Challenged Advances (by seeking to recharacterize them as equity or subordinate them to general unsecured claims), (iii) "challeng[e] the perfection or priority of the Prepetition Second Liens" insofar as they arise from the Challenged Advances (again, by seeking to recharacterize them as equity or subordinate them to general unsecured claims), and (iv) assert "objections, claims or causes of action (including . . . actions for . . . avoidance power claims) against the Prepetition Second Lien Lenders" – i.e., Victory Park and Jansan, as transferee of Victory Park's Second-Lien Debt – "relating to the Prepetition Second Liens or the Prepetition Second Lien Obligations."

Section 363(k) of the Bankruptcy Code, which governs credit bidding in bankruptcy, provides:

> At a sale under subsection (b) of this section of property that is subject to a lien that secures an ***allowed claim***, unless the court for cause orders otherwise the holder of such claim may bid at such sale, and, if the holder of such claim purchases such property, such holder may offset such claim against the purchase price of such property.

11 U.S.C. § 363(k) (emphasis added). The Committee's Challenge rights clearly included rights and remedies with respect to Jansan's credit bid of the Second Lien Debt. At the time the Sale Order was entered, the "allowed" amount of the Second-Lien Debt that Jansan would be entitled to credit bid under § 363(k) remained subject to the Committee's "Challenge" rights under paragraph 26 the Final DIP Order. (B.D.I. 167 at ¶ 26) The unambiguous language of this provision, combined with the unambiguous language of Paragraph 48 of the Sale Order, combine to make clear that Appellant's Challenge survived both entry of the Sale Order and the closing of the transactions.

Appellees argue that paragraph 48 is "not explicit" (*id.* at 29) as is too "highly general" (*id.* at 28) to be construed as providing the Committee the right to bring claims for the relief it seeks. Appellees refer to the "Challenge" right as a "limited right" of objection to the Debtors' stipulations as to the validity, priority, and extent of Jansan's liens and claims. (*See* D.I. 21 at 2, 6; *see also* 12/13/17 Hr'g Tr. at 14-15) (Appellees' argument to Bankruptcy Court)) However, as noted in footnote 10, the Sale Order's definition of "Challenge" is sufficiently broad to capture all of the claims Appellant seeks to assert in its Complaint.

Appellees also argue that the Complaint is not a "Challenge" because it was not "timely commence[d]" by the Challenge Deadline of July 25, 2017. (*See* D.I. 21 at 21) It is undisputed that the Complaint was filed on July 25, 2017. Thus, Appellees' untimeliness contention rests on their assertion that the Final DIP Order "meant more than just bringing the action by the

13

mandated cut-off date," and actually required the Committee to commence *and adjudicate* its Challenge prior to the closing of the sale (which was several days prior even to the Challenge Deadline). (*Id.*) While debtor-in-possession financing orders may contain such provisions, what matters is that the entities involved here did not agree to such. The Final DIP Order in this case requires only commencement of a "Challenge" by the Challenge Date. (B.D.I. 167 at ¶ 26) ("The stipulations and admissions contained in this Final Order . . . shall be binding . . . unless a party has timely commenced a [Challenge] . . . no later than July 25, 2017. If no such Challenge is timely commenced as of such date[] then . . . the claims, liens and security interests of the Prepetition Second Lien Secured Parties shall . . . be deemed to be finally allowed for all purposes in the Chapter 11 Cases . . . .'"))

Appellees' attempts to evade the clear language of paragraph 48 lack merit. Appellant's Complaint should not have been dismissed.

### B. The Purchase Price Was Not Conditioned On Allowance of the Second-Lien Lenders' Claims

Appellees urge this Court to reject the Committee's argument that the Second Lien Debt was not fully allowed for the purpose of a § 363(k) credit bid based on the Committee's Challenge rights. According to Appellees, that argument "does not pass legal muster" because "by the plain text of the statute, a debt cannot be credit bid unless it is an 'allowed claim' secured by a lien on property subject to the § 363(b) sale." (D.I. 21 at 20) Thus, Appellees argue, "if the Bankruptcy Court authorizes a sale that includes credit bidding, the court must necessarily conclude that the underlying debt is an allowed claim," which conclusion, Appellees argue, is clear under the Bid Procedures Order, Final APA, and Sale Order.

Those documents do not persuade the Court of the correctness of such a conclusion. Under the Final APA, the purchase price for the Debtors' assets was defined as "an *amount*

equal to" the sum of various components, which included a "credit bid in the amount of the Second Lien Debt." (B.D.I. 295, Ex. A § 3.1 (emphasis added)) The term "Second Lien Debt" was defined simply as the amounts outstanding under the Second Lien Credit and Security Agreement with Victory Park, without reference to whether those amounts constituted "allowed" claims that could actually be credit bid under § 363(k) of the Bankruptcy Code. (*Id.* at Annex A-9) Jansan's obligation to close under the Final APA was not conditioned in any way on the allowance of its claims or credit bid in any particular amount (*see id.* at 7.1), and Jansan's deliveries at closing under the Final APA expressly included "the *amount* required to be remitted to the Sellers on the Closing Date in accordance with Section 3.1" (*id.* at 8.3(b) (emphasis added)) – in other words, the amount of the purchase price – without any reference to the specific amount of any credit bid. Thus, if $7.5 million of Jansan's "credit bid currency" had been eliminated by reason of a successful "Challenge" by the Committee, Jansan still would have been obligated to close the sale at the agreed-upon purchase price of $63 million.

As such, there is no support in the Final APA for notion that Jansan could have "simply gone to market with $29.2 million in § 363(k) currency and $55.5 million collectively as its bid," as posited (without citation to any operative documents, and without taking all reasonable inferences in favor of Appellant) in the Decision. *See Katy*, 590 B.R. at 637-38.

C. **Appellees' Other Arguments**

Appellees make no effort to harmonize the Bankruptcy Court's dismissal order with the plain language of paragraph 48 of the Sale Order. Rather, they introduce a host of other reasons for why the closing of a sale or credit bidding of a claim would *ordinarily* cut off relief of the sort the Committee sought in the Complaint. (*See e.g.,* D.I. 21 at 18-19) (arguing that entirety of the Second Lien Debt was "extinguished" at the close of the sale, leaving Committee with "no functional utility" in any claims) None of the cases cited by Appellees involved the unusual

15

feature of a Sale Order that expressly preserved rights and remedies for litigation post-closing, and Appellees' arguments do not provide the Court with an independent basis to affirm the Dismissal Order.[11] Therefore, none of Appellees' arguments justify affirmance of the Bankruptcy Court's order.[12]

## V. CONCLUSION

---

[11] Appellees raise the additional argument that monetary relief is not an available remedy for recharacterization or equitable subordination. (D.I. 21 at 23-24) This argument is raised for the first time on appeal and without the benefit of briefing or analysis below. This Court, thus, will not consider it. *See generally Delaware Nation v. Pennsylvania*, 446 F.3d 410, 416 (3d Cir. 2006) ("Absent exceptional circumstances, this Court will not consider issues raised for the first time on appeal."). It will be up to the Bankruptcy Court, on remand, to decide whether Appellees' new argument is untimely and, if it is not, whether it is correct on the merits. If necessary, it will be for the Bankruptcy Court in the first instance to evaluate Appellant's responses, including that Appellees' authorities only apply to equitable subordination, *see In re Century Glove, Inc.*, 151 B.R. 327, 332 (Bankr. D. Del. 1993); *In re Bernard L. Madoff Inv. Sec. LLC*, 515 B.R. 117, 160 (Bankr. S.D.N.Y. 2014), and that the Complaint here did not seek "damages" for facts giving rise to recharacterization or subordination.

[12] The Court further agrees with Appellant that the Bankruptcy Court should not have denied its request for leave to amend (which it did, without explanation, by making its dismissal with prejudice). Given the Court's conclusions, it follows that amendment would not have been futile.

Furthermore, to the extent the Bankruptcy Court's Dismissal Order was based on its conclusion that it could provide no remedy for the Committee, and what it may have viewed as unfounded speculation as to what the bidding process would have looked like had Jansan's bid not been "inflated" (as it was, in Appellant's view), these concerns – which are echoed by Appellees (*see, e.g.*, D.I. 21 at 29-30) (arguing Appellant faces "fatal redressibility problem" and its theories rest on "bare speculation") – provide (in the context of this case) additional reasons Appellant should have been allowed the opportunity to amend its Complaint. Drawing all reasonable inferences in favor of Appellant, this Court is not persuaded that Appellant cannot state a claim on which relief may be granted. The Court agrees with Appellant that: "Appellees offer no explanation how the Bankruptcy Court, in considering a Rule 12(b)(6) motion, could legitimately *find*, based solely on the four corners of the Complaint and the reasonable inferences to be drawn therefrom (all in favor of the Committee, as non-movant), that Jansan would have been the highest bidder with a $55.5 million bid." (D.I. 22 at 6)

Whether Appellant will, in fact, prevail on any claim is not, of course, an issue presently before the Court.

For the foregoing reasons, the Court reverses the Decision, except to the limited extent that it is not being challenged as to the dismissal of Count VI, and remands to the Bankruptcy Court for entry of an order granting leave to amend the Complaint (should Appellant wish to amend). An appropriate Order follows.

September 30, 2019
Wilmington, Delaware

HONORABLE LEONARD P. STARK
UNITED STATES DISTRICT COURT